**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

MARGARET A. PETERS                                                          PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:10cv569 LG-RHW

CITY OF WAVELAND, MISSISSIPPI, a Municipal
Corporation, and OFFICER TRAVIS FOREMAN                          DEFENDANTS

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

COME NOW, the Defendants in this action, City of Waveland, Mississippi (hereinafter "City"), and Travis Foreman, in his Individual and Official capacities, by and through their attorneys of record, Dogan & Wilkinson, PLLC, pursuant to Federal Rule of Civil Procedure 56, and hereby move this Court for entry of summary judgment in their favor, and in support thereof would show unto the Court as follows:

### I. Introduction

On December 16, 2010 Plaintiff filed suit against Defendants for injuries relating to an arrest occurring on March 17, 2008.  An Amended Complaint was filed on January 6, 2011 to clarify the capacity in which Travis Foreman was being sued.  *See Amended Complaint*, attached as "Exhibit A."  On March 1, 2011, Plaintiff waived all claims but those applicable under 42 U.S.C.A. § 1983.  *See Correspondence Waiving Claims*, attached as "Exhibit B."  As best as can be ascertained from the face of the Complaint, Plaintiff claims the Defendants collectively acted to violate her Fourth, Fifth, Eighth, and Fourteenth Amendment rights secured under 42 U.S.C. § 1983.  *Id.*  According to the Complaint, the City's liability lies in alleged promulgation of policies or customs resulting in

1

Plaintiff's injuries.  *Id.*  Damages claimed include physical injury, pain and suffering, emotional distress, mental anguish, attorneys fees, and interest.

## II. Summary Judgment Authority

### A. Federal Rule of Civil Procedure 56

Pursuant to Federal Rule of Civil Procedure 56, "a party against whom a claim...is asserted...may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor." F.R.C.P. 56.  The 5th Circuit has stated numerous times that summary judgment "is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no issue of material fact exist and the moving party is entitled to summary judgment as a matter of law." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d 347, at 349 (5th Cir. 2005).  "The movant bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact."  *Id.*  "The burden then shifts to the non-movant to show the existence of a genuine fact issue for trial; however the non-movant may not rest upon the allegations in the pleadings to make such a showing."  *Id.*

### B. Issues of Disputed Fact When Video Footage is Available

As will be described below, a wide chasm exists between the facts portrayed by Plaintiff's testimony and the facts depicted in video footage obtained during discovery.  This creates an issue of disputed fact.  It does not, however create a ***genuine*** issue of material fact.  Nor does it prevent summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

2

In *Scott*, a Plaintiff's claim of excessive force against defendants hinged on his personal recollection of events. *Id.* A video was produced which revealed his version of events as "fiction." *Id* at 381. In light of the video, the United States Supreme Court reversed the appellate court and granted summary judgment. *Id.*

Here too, there is video footage of the incident in question. Instead of relying on Plaintiff's fictional account of events to prevent summary judgment, this Honorable Court must take account of the attached video footage to inform its opinion. *See Video Footage*, attached as "Exhibit C[1]."

### III. Facts in the Record:
### Undisputed Facts, Plaintiff's Version of Event, and The Surveillance Footage

### A. Undisputed Facts

The following facts are undisputed by either party:

1.   On March 17, 2009, Plaintiff was approached by Officer Foreman for parking in a fire/emergency lane in front of the Wal-Mart store located at 460 Hwy 90, Waveland, MS. *See "Exhibit A."*

2.   Matt Foreman, Officer Foreman's brother, was present with Officer Foreman during the incident. *See Deposition Transcript of Plaintiff, pg. 28, lines 4-17*, marked as "Exhibit F."

3.   Plaintiff was illegally parked in a fire/emergency lane when Officer Foreman asked Plaintiff to move her vehicle or be issued a citation. *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.*

---

[1]

This footage was provided to Plaintiff on July 27, 2011. Additionally, Requests for Admission have been submitted to Plaintiff in an attempt to authenticate the footage in question. As no response has been obtained as of the filing of this motion, Defendant has attached affidavits of the Wal-Mart Loss Prevention Manager, Joey Brown and Defendant, Travis Foreman, verifying the authenticity and accuracy of the footage. *See Affidavits of Brown and Foreman*, attached as "Exhibits D and E."

4.      When Officer Foreman approached, an argument ensued between Officer Foreman and
Plaintiff.  *See "Exhibit A."*

5.      At some point during the argument, Plaintiff was placed under arrest by Officer Foreman for
parking in a fire lane and disorderly conduct.  *See "Exhibit F,"* at pg. 24, lines 11-14.

6.      Plaintiff was still in her vehicle when Officer Foreman informed her of her arrest.  *See
"Exhibit F,"* at pg. 32, lines 11-16.

7.      To effectuate the arrest, Officer Foreman placed his hands on Plaintiff's left arm in an
attempt to remove Plaintiff from her vehicle.  *See "Exhibit A."*

8.      As Officer Foreman attempted to pull Plaintiff from her vehicle, Plaintiff's left arm began
bleeding.  *See "Exhibit A."*

9.      Upon realizing Plaintiff was bleeding, Officer Foreman released Plaintiff and allowed her
to exit the vehicle under her own power.  *See "Exhibit F,"* at pg. 35, line 21 to pg. 36, line
1.

10.     Once arrested and in handcuffs, Plaintiff was escorted from her vehicle to Officer Foreman's
patrol unit for transportation to the station.  The video and Plaintiff's testimony vary widely
regarding the particulars of this sequence, as will be outlined herein.

11.     Once at the patrol unit, Plaintiff, without permission to do so, began walking around the rear
of Officer Foreman's unit.  *See "Exhibit F,"* at pg. 47, line 11 to pg. 48 line 2.

12.     Officer Foreman saw Plaintiff moving around the patrol unit and reached out, grabbing
Plaintiff from behind by the shirt.  *See "Exhibit F,"* at pg. 50, lines 3-10.

13.     When Officer Foreman grabbed her by the shirt, Plaintiff fell to the ground.  *See "Exhibit
F,"* at pg. 50, lines 13-14.

4

14.   Officer Foreman uncuffed Plaintiff and allowed her to regain her footing before re-cuffing her wrists in front of her body, and placing her in the patrol unit.  *See "Exhibit F,"* at pg. 54, lines 9-14.

15.   Plaintiff was driven to the police station where Officer Foreman summoned an ambulance to treat Plaintiff's arm contusions. *See "Exhibit F,"* at pg. 71, lines 2-5.

16.   Once treated, Plaintiff was taken by Officer Foreman to the local detention center where she was released from his custody.   *See "Exhibit F,"* at pg. 75, lines 18-20.

17.   At no time during discovery has Plaintiff identified a policy or custom of the City of Waveland which was a moving force of any alleged constitutional violation.

18.   At no time during discovery has Plaintiff tendered evidence that Officer Foreman was inadequately trained or supervised.

19.   At no time in discovery has Plaintiff provided evidence that Defendants had a discriminatory purpose or motive that violated Plaintiff's equal protection rights.

### B. Plaintiff's Version of Events

In addition to the above undisputed facts, Plaintiff alleges the following[2]:

1.   Once Officer Foreman informed Plaintiff she was under arrest, and after he allowed her to exit her vehicle unassisted, Officer Foreman told Plaintiff to turn and face her vehicle, then slammed her into the side of the van from approximately 18-20 inches away.  *See "Exhibit F,"* at pg. 37, lines 6-21.

2.   Once cuffed, Officer Foreman grabbed Plaintiff's upper arm and pulled upward, causing her

---

[2]

The allegations outlined in this section are taken from Plaintiff's testimony and are contested by Defendants.  They are merely illustrative of blatant falsities contradicted by the video footage attached.

head to tilt downward.  *See "Exhibit F,"* at pg. 40, lines 6-22.

3.      Officer Foreman pulled Plaintiff in this manner all the way to the patrol car.  *See "Exhibit F,"* at pg. 40, lines 23-25.

4.      While being pulled to Officer Foreman's unit, Plaintiff saw a neighbor entering Wal-Mart.  *See "Exhibit F,"* at pg. 42, lines 7-10.

5.      Plaintiff dropped her keys for the neighbor to retrieve, at which point Officer Foreman leaned down to prevent the neighbor from obtaining them; Plaintiff was pulled down even further as Officer Foreman reached for the keys.  *See "Exhibit F,"* at pg. 43, line 15 to pg. 45 line 21.

6.      When Plaintiff and Officer Foreman eventually reached the patrol unit, Officer Foreman was standing directly behind her at the driver side front door, and directed her to enter the vehicle.  *See "Exhibit F,"* at pg. 46, lines 4-16.

7.      No doors were open on the unit when Officer Foreman gave Plaintiff this command.  *See "Exhibit F,"* at pg. 47, lines 20-24.

8.      At this point, Matt Foreman, who witnessed the majority of the incident, was standing next to the passenger side rear door, therefore Plaintiff thought Officer Foreman wanted her to enter the vehicle through that door.  *See "Exhibit F,"* at pg. 47, lines 8-24.

9.      As such, Plaintiff began walking around the rear of the vehicle. *See "Exhibit F,"* at pg. 47, line 25, to pg. 48, line 2.

10.     Officer Foreman, watching Plaintiff walk to the other side of the vehicle, grabbed Plaintiff by her shirt and pull her to the ground. *See "Exhibit F,"* at pg. 48, lines 3-7.

11.     When Plaintiff was pulled to the ground by Officer Foreman, only the passenger side door

6

had been opened.  *See "Exhibit F,"* at pg. 48, lines 20-22.

12.    While on the ground, Officer Foreman made an exaggerated kicking gesture at Plaintiff's

lower back, but stopped short as other witnesses were present.  *See "Exhibit F,"* at pg. 51,

lines 5-15.

13.    At the police station, Officer Foreman pulled the chair out from under Plaintiff and rammed

it back against her legs, however Plaintiff neither bruised nor bled from this incident.  *See*

*"Exhibit F,"* at pg. 75, lines 6-17 and pg. 73, lines 5-23.

### C. Surveillance Footage From Wal-Mart

The surveillance footage depicts events distinctly different from Plaintiff's testimony.   In

short, the video displays the following account:

1.    The Plaintiff was not slammed into her own van when allowed to exit upon her own volition.

*See "Exhibit C."*

2.    The video clearly demonstrates Plaintiff walked from her vehicle to the patrol unit without

any physical contact from Officer Foreman.  *Id.*

3.    Plaintiff did not drop her keys for a neighbor when walking toward the patrol unit.  *Id.*  Nor

did Officer Foreman bend Plaintiff down further to grab any such keys.  *Id.*

4.    Upon approaching the patrol unit, Plaintiff, Officer Foreman, and Matt Foreman all remained

on the driver side of the vehicle.  *Id.*

5.    At no time prior to Plaintiff falling did Matt Foreman move to the passenger side of the

vehicle.  *Id.*

6.    Instead, Officer Foreman leaned Plaintiff on the rear driver side panel of the unit, opened the

driver side rear door, and began manipulating items inside the vehicle.  *Id.*

7

7.     While Officer Foreman was busy moving items in the back seat, Plaintiff turned to look at him, then turned toward the rear of the patrol unit and proceeded to walk away from the officer.  *Id.*

8.     Officer Foreman looked up from his location and realized the Plaintiff was moving away from his custody.  *Id.*

9.     In an attempt to stop the Plaintiff from leaving the immediate area, Officer Foreman grabbed Plaintiff by the shirt and she fell to the ground.  *Id.*

10.    During the time Plaintiff was on the ground, Officer Foreman never made any attempt to kick Plaintiff as described in her testimony.  *Id.*

## IV. Argument and Authority

### A. Fourth Amendment: Unreasonable Seizure

As Officer Foreman's actions were objectively reasonable, Plaintiff's 42 U.S.C. § 1983 claim for unreasonable seizure under the Fourth Amendment fails.  *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, 57 USLW 4513 (1989).  Specifically, at the time of her arrest, Plaintiff was admittedly violating a Waveland ordinance.  *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.* This created probable cause for her arrest and an objectively reasonable basis for the seizure. *Virginia v. Moore*, 553 U.S. 164 (2008).  In the alternative, even if such a Constitutional violation occurred, the Responding Officers are entitled to qualified immunity from said claims.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### B. Fourth Amendment: Excessive Force

As Officer Foreman's actions were objectively reasonable, Plaintiff's 42 U.S.C. § 1983 claim for excessive force under the Fourth Amendment fails. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct.

1865, 104 L.Ed.2d 443, 57 USLW 4513 (1989).  Additionally, several injuries claimed by the Plaintiff are *de minimis* in nature, and thus not actionable under a claim for excessive force. *Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007).  In the alternative, even if such a Constitutional violation occurred, Officer Foreman is entitled to qualified immunity from said claims.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### C. Fifth and Fourteenth Amendments: Equal Protection

Plaintiff has failed to allege discrimination based membership in a federally protected class, instead apparently opting to make a "class-of-one" claim.  *See "Exhibit A."*  Plaintiff has failed to put forth evidence that she was intentionally treated differently from others similarly situated and that there was no rational basis for any difference in treatment.  *Bynum v. City of Magee*, 590 F. Supp.2d 814 (S.D. 2008).  As such, Plaintiff's claim for equal protection violation under the Fifth and Fourteenth Amendments fail.

### D. Fifth and Fourteenth Amendments: Due Process

Because Officer Foreman had probable cause to arrest Plaintiff in this matter, Plaintiff's claim for denial of due process fails.  *See "Exhibit A."*  If probable cause exists to make an arrest, no claim for violation of due process rights exists based on said arrest.  *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992).  As such, Defendants are entitled to summary judgment on this count.

### E. Eighth Amendment: Cruel and Unusual Punishment

According to the U.S. Supreme Court, protection from cruel and unusual punishment does not vest in an individual until such time as they are convicted of a crime, enter a plea of guilty, or become a pretrial detainee.  *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711

(1977). Plaintiff allegations revolve around incidents occurring prior to conviction or plea. *See* *"Exhibit A."* Plaintiff arguably became a pretrial detainee when she was ultimately arrested and brought to the police station for booking. Assuming so, the only allegation occurring at the police station resulted in a *de minimis* "injury," which is not actionable under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312 (1986).

### F. Municipal Liability for Actions of Officer Foreman

The Plaintiff's claims against the City of Waveland fail because no constitutional violations occurred during the alleged incident. In the alternative, the plaintiff has failed to bring evidence of any policy or custom established by Defendant which caused or contributed to an alleged constitutional violation. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't. Of Social Sciences*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L.Ed. 2d 611 (1978); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004); *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir. 1980).

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request this Honorable Court grant this Motion for Summary Judgment. Defendants further request any other or different relief this Court deems just.

Respectfully submitted, this the 15th day of September, 2011.

CITY OF WAVELAND, MS AND OFFICER
TRAVIS FOREMAN, Defendants


BY: /s/ *Joshua W. Danos*
Joshua W. Danos (MSB# 101501)
Nathan A. Bosio (MSB# 100185)
DOGAN & WILKINSON, PLLC
Post Office Box 1618
Pascagoula, MS 39568-1618

10

228-762-2272
228-762-4145 fax
jdanos@dwwattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2011, I electronically filed the foregoing with the Clerk

of the court using the ECF system which sent notification of such filing to the following:

>       David C. Frazier, Esq.
>       Frazier Law Firm, PLLC
>       Pascagoula, MS 39568-1170

>                               /s/ *Joshua W. Danos*
>                               JOSHUA W. DANOS

JOSHUA W. DANOS MSB #101501
NATHAN A. BOSIO, MSB # 100185
DOGAN & WILKINSON, PLLC
734 Delmas Avenue
Post Office Box 1618
Pascagoula, MS 39568-1618
(228) 762-2272 - PHONE
(228) 762-4145 - FAX