**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**MARGARET A. PETERS**                                                      **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 1:10cv569 LG-RHW**

**CITY OF WAVELAND, MISSISSIPPI, a Municipal**
**Corporation, and OFFICER TRAVIS FOREMAN**                **DEFENDANTS**

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

COME NOW, the Defendants in this action, City of Waveland, Mississippi (hereinafter "City"), and Travis Foreman, in his Individual and Official capacities, by and through their attorneys of record, Dogan & Wilkinson, PLLC, pursuant to Federal Rule of Civil Procedure 56, and hereby move this Court for entry of summary judgment in their favor, and in support thereof would show unto the Court as follows:

### I. Introduction

On December 16, 2010 Plaintiff filed suit against Defendants for injuries relating to an arrest occurring on March 17, 2008.  An Amended Complaint was filed on January 6, 2011 to clarify the capacity in which Travis Foreman was being sued.  *See Amended Complaint*, attached as "Exhibit A."  On March 1, 2011, Plaintiff waived all claims but those applicable under 42 U.S.C.A. § 1983.  *See Correspondence Waiving Claims*, attached as "Exhibit B."  As best as can be ascertained from the face of the Complaint, Plaintiff claims the Defendants collectively acted to violate her Fourth, Fifth, Eighth, and Fourteenth Amendment rights secured under 42 U.S.C. § 1983.  *Id.*  According to the Complaint, the City's liability lies in alleged promulgation of policies or customs resulting in

1

Plaintiff's injuries.  *Id.*  Damages claimed include physical injury, pain and suffering, emotional distress, mental anguish, attorneys fees, and interest.

## II. Summary Judgment Authority

### A. Federal Rule of Civil Procedure 56

Pursuant to Federal Rule of Civil Procedure 56, "a party against whom a claim...is asserted...may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor." F.R.C.P. 56.  The 5th Circuit has stated numerous times that summary judgment "is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no issue of material fact exist and the moving party is entitled to summary judgment as a matter of law." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d 347, at 349 (5th Cir. 2005).  "The movant bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact."  *Id.*  "The burden then shifts to the non-movant to show the existence of a genuine fact issue for trial; however the non-movant may not rest upon the allegations in the pleadings to make such a showing."  *Id.*

### B. Issues of Disputed Fact When Video Footage is Available

As will be described below, a wide chasm exists between the facts portrayed by Plaintiff's testimony and the facts depicted in video footage obtained during discovery.  This creates an issue of disputed fact.  It does not, however create a ***genuine*** issue of material fact.  Nor does it prevent summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

2

In *Scott*, a Plaintiff's claim of excessive force against defendants hinged on his personal recollection of events. *Id.* A video was produced which revealed his version of events as "fiction." *Id* at 381. In light of the video, the United States Supreme Court reversed the appellate court and granted summary judgment. *Id.*

Here too, there is video footage of the incident in question. Instead of relying on Plaintiff's fictional account of events to prevent summary judgment, this Honorable Court must take account of the attached video footage to inform its opinion. *See Video Footage*, attached as "Exhibit C[1]."

### III. Facts in the Record:
### Undisputed Facts, Plaintiff's Version of Event, and The Surveillance Footage

#### A. Undisputed Facts

The following facts are undisputed by either party:

1.    On March 17, 2009, Plaintiff was approached by Officer Foreman for parking in a fire/emergency lane in front of the Wal-Mart store located at 460 Hwy 90, Waveland, MS.  *See "Exhibit A."*

2.    Matt Foreman, Officer Foreman's brother, was present with Officer Foreman during the incident. *See Deposition Transcript of Plaintiff, pg. 28, lines 4-17*, marked as "Exhibit F."

3.    Plaintiff was illegally parked in a fire/emergency lane when Officer Foreman asked Plaintiff to move her vehicle or be issued a citation. *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.*

---

[1]

This footage was provided to Plaintiff on July 27, 2011. Additionally, Requests for Admission have been submitted to Plaintiff in an attempt to authenticate the footage in question. As no response has been obtained as of the filing of this motion, Defendant has attached affidavits of the Wal-Mart Loss Prevention Manager, Joey Brown and Defendant, Travis Foreman, verifying the authenticity and accuracy of the footage. *See Affidavits of Brown and Foreman*, attached as "Exhibits D and E."

4.    When Officer Foreman approached, an argument ensued between Officer Foreman and Plaintiff.  *See "Exhibit A."*

5.    At some point during the argument, Plaintiff was placed under arrest by Officer Foreman for parking in a fire lane and disorderly conduct.  *See "Exhibit F,"* at pg. 24, lines 11-14.

6.    Plaintiff was still in her vehicle when Officer Foreman informed her of her arrest.  *See "Exhibit F,"* at pg. 32, lines 11-16.

7.    To effectuate the arrest, Officer Foreman placed his hands on Plaintiff's left arm in an attempt to remove Plaintiff from her vehicle.  *See "Exhibit A."*

8.    As Officer Foreman attempted to pull Plaintiff from her vehicle, Plaintiff's left arm began bleeding.  *See "Exhibit A."*

9.    Upon realizing Plaintiff was bleeding, Officer Foreman released Plaintiff and allowed her to exit the vehicle under her own power.  *See "Exhibit F,"* at pg. 35, line 21 to pg. 36, line 1.

10.   Once arrested and in handcuffs, Plaintiff was escorted from her vehicle to Officer Foreman's patrol unit for transportation to the station.  The video and Plaintiff's testimony vary widely regarding the particulars of this sequence, as will be outlined herein.

11.   Once at the patrol unit, Plaintiff, without permission to do so, began walking around the rear of Officer Foreman's unit.  *See "Exhibit F,"* at pg. 47, line 11 to pg. 48 line 2.

12.   Officer Foreman saw Plaintiff moving around the patrol unit and reached out, grabbing Plaintiff from behind by the shirt.  *See "Exhibit F,"* at pg. 50, lines 3-10.

13.   When Officer Foreman grabbed her by the shirt, Plaintiff fell to the ground.  *See "Exhibit F,"* at pg. 50, lines 13-14.

4

14.     Officer Foreman uncuffed Plaintiff and allowed her to regain her footing before re-cuffing her wrists in front of her body, and placing her in the patrol unit.  *See "Exhibit F,"* at pg. 54, lines 9-14.

15.     Plaintiff was driven to the police station where Officer Foreman summoned an ambulance to treat Plaintiff's arm contusions. *See "Exhibit F,"* at pg. 71, lines 2-5.

16.     Once treated, Plaintiff was taken by Officer Foreman to the local detention center where she was released from his custody.   *See "Exhibit F,"* at pg. 75, lines 18-20.

17.     At no time during discovery has Plaintiff identified a policy or custom of the City of Waveland which was a moving force of any alleged constitutional violation.

18.     At no time during discovery has Plaintiff tendered evidence that Officer Foreman was inadequately trained or supervised.

19.     At no time in discovery has Plaintiff provided evidence that Defendants had a discriminatory purpose or motive that violated Plaintiff's equal protection rights.

### B. Plaintiff's Version of Events

In addition to the above undisputed facts, Plaintiff alleges the following[2]:

1.     Once Officer Foreman informed Plaintiff she was under arrest, and after he allowed her to exit her vehicle unassisted, Officer Foreman told Plaintiff to turn and face her vehicle, then slammed her into the side of the van from approximately 18-20 inches away.  *See "Exhibit F,"* at pg. 37, lines 6-21.

2.     Once cuffed, Officer Foreman grabbed Plaintiff's upper arm and pulled upward, causing her

---

[2]

The allegations outlined in this section are taken from Plaintiff's testimony and are contested by Defendants.  They are merely illustrative of blatant falsities contradicted by the video footage attached.

5

head to tilt downward.  *See "Exhibit F,"* at pg. 40, lines 6-22.

3.  Officer Foreman pulled Plaintiff in this manner all the way to the patrol car.  *See "Exhibit F,"* at pg. 40, lines 23-25.

4.  While being pulled to Officer Foreman's unit, Plaintiff saw a neighbor entering Wal-Mart. *See "Exhibit F,"* at pg. 42, lines 7-10.

5.  Plaintiff dropped her keys for the neighbor to retrieve, at which point Officer Foreman leaned down to prevent the neighbor from obtaining them; Plaintiff was pulled down even further as Officer Foreman reached for the keys.  *See "Exhibit F,"* at pg. 43, line 15 to pg. 45 line 21.

6.  When Plaintiff and Officer Foreman eventually reached the patrol unit, Officer Foreman was standing directly behind her at the driver side front door, and directed her to enter the vehicle. *See "Exhibit F,"* at pg. 46, lines 4-16.

7.  No doors were open on the unit when Officer Foreman gave Plaintiff this command.  *See "Exhibit F,"* at pg. 47, lines 20-24.

8.  At this point, Matt Foreman, who witnessed the majority of the incident, was standing next to the passenger side rear door, therefore Plaintiff thought Officer Foreman wanted her to enter the vehicle through that door.  *See "Exhibit F,"* at pg. 47, lines 8-24.

9.  As such, Plaintiff began walking around the rear of the vehicle. *See "Exhibit F,"* at pg. 47, line 25, to pg. 48, line 2.

10. Officer Foreman, watching Plaintiff walk to the other side of the vehicle, grabbed Plaintiff by her shirt and pull her to the ground. *See "Exhibit F,"* at pg. 48, lines 3-7.

11. When Plaintiff was pulled to the ground by Officer Foreman, only the passenger side door

had been opened. *See "Exhibit F,"* at pg. 48, lines 20-22.

12. While on the ground, Officer Foreman made an exaggerated kicking gesture at Plaintiff's lower back, but stopped short as other witnesses were present. *See "Exhibit F,"* at pg. 51, lines 5-15.

13. At the police station, Officer Foreman pulled the chair out from under Plaintiff and rammed it back against her legs, however Plaintiff neither bruised nor bled from this incident. *See "Exhibit F,"* at pg. 75, lines 6-17 and pg. 73, lines 5-23.

### C. Surveillance Footage From Wal-Mart

The surveillance footage depicts events distinctly different from Plaintiff's testimony. In short, the video displays the following account:

1. The Plaintiff was not slammed into her own van when allowed to exit upon her own volition. *See "Exhibit C."*

2. The video clearly demonstrates Plaintiff walked from her vehicle to the patrol unit without any physical contact from Officer Foreman. *Id.*

3. Plaintiff did not drop her keys for a neighbor when walking toward the patrol unit. *Id.* Nor did Officer Foreman bend Plaintiff down further to grab any such keys. *Id.*

4. Upon approaching the patrol unit, Plaintiff, Officer Foreman, and Matt Foreman all remained on the driver side of the vehicle. *Id.*

5. At no time prior to Plaintiff falling did Matt Foreman move to the passenger side of the vehicle. *Id.*

6. Instead, Officer Foreman leaned Plaintiff on the rear driver side panel of the unit, opened the driver side rear door, and began manipulating items inside the vehicle. *Id.*

7

7.   While Officer Foreman was busy moving items in the back seat, Plaintiff turned to look at him, then turned toward the rear of the patrol unit and proceeded to walk away from the officer. *Id.*

8.   Officer Foreman looked up from his location and realized the Plaintiff was moving away from his custody. *Id.*

9.   In an attempt to stop the Plaintiff from leaving the immediate area, Officer Foreman grabbed Plaintiff by the shirt and she fell to the ground. *Id.*

10.  During the time Plaintiff was on the ground, Officer Foreman never made any attempt to kick Plaintiff as described in her testimony. *Id.*

## IV. Argument and Authority

### A. Fourth Amendment: Unreasonable Seizure

### (1) Officer Foreman's Seizure Was Objectively Reasonable[3]

The United States Supreme Court has repeatedly held that objectively reasonable seizures are not actionable. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, 57 USLW 4513 (1989). The seizure at issue is the arrest of the Plaintiff. *See "Exhibit A."* Plaintiff admits she was parked illegally in a fire lane which eventually led to her arrest. *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.* It is well established that decisions to make arrests and/or seizures based upon probable cause are objectively reasonable and thus not actionable. *Virginia v. Moore*, 553 U.S. 164 (2008). This stands true no matter how trivial the violation. *White v. Garcia*, 117 Fed.Appx. 912 (2004) (affirming issuance of summary judgment against claims of unlawful seizure where probable

---

[3] The manner in which the arrest was made will be addressed in a separate portion of this pleading. The immediate section relates solely to the objective reasonableness of making the arrest and/or seizure.

cause existed to arrest individual for traffic violations).   Furthermore, Plaintiff admits she and Officer Foreman engaged in an argument which additionally led to her arrest.  *See "Exhibit A."*

In any event, the decision to place Plaintiff under arrest was supported by probable cause by Plaintiff's own admission.  *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.*  As such, that decision cannot be deemed objectively unreasonable, and Plaintiff's cause of action for unreasonable seizure must be dismissed.  *Graham*, 490 U.S. 386 (1989).

### (2) Officer Foreman is Entitled to Qualified Immunity

The defense of qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As Officer Foreman had probable cause to arrest Plaintiff by her own admission, he cannot be held liable under a claim such as this, and summary judgment should be granted based on qualiied immunity.

### B. Fourth Amendment: Excessive Force

### (1) The Amount of Force Used During
### Plaintiff's Arrest Was Objectively Reasonable

To state a claim for excessive force, Plaintiff must show she suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Ballard v. Burton*, 444 F.3d 391, 402, 402 (5th Cir. 2006).  Stated another way, if Officer Foreman's actions were objectively reasonable under the circumstances, summary judgment must be granted on the count of excessive force. *Graham*, 490 U.S. 386 (1989). The initial inquiry must focus on the facts before the Court.  Despite Plaintiff's fictional version of

events, several truths can be ascertained from the attached video.  *See "Exhibit C."*  Officer Foreman did not "slam" Plaintiff into the side of her vehicle.  *Id.*  Neither did he wrench Plaintiff's cuffed arm upward and drag Plaintiff to his patrol unit.  *Id.*  Additionally, he did not attempt to kick Plaintiff in the lower back as she lay on the ground.  *Id.*

Instead, based on the undisputed facts and the video surveillance, Officer Foreman approached Plaintiff's vehicle because she was illegally parked in a fire lane.  *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.*  Officer Foreman began issuing a citation to Plaintiff, and when the situation escalated into an argument, Officer Foreman made the decision to arrest Plaintiff.  *See "Exhibit A."*  In an attempt to remove Plaintiff from her vehicle, Officer Foreman took hold of Plaintiff's left arm.  *See "Exhibits A and C."*  When Officer Foreman took hold of Plaintiff to place her under arrest, her skin separated and her arm began to bleed.  *See "Exhibit A."*  When Officer Foreman saw the blood, he released Plaintiff and allowed her to step out of the vehicle on her own.  *See "Exhibit C"* and *"Exhibit F,"* at pg. 35, line 21 to pg. 36, line 1.  Upon exiting the vehicle, Plaintiff was placed against her van and handcuffed.  *See "Exhibit C."*  She then walked to Officer Foreman's patrol unit unassisted.  *Id.*

Once Plaintiff arrived at Officer Foreman's unit, she was placed against the rear driver side panel of the unit while Officer Foreman opened his rear driver side door and began manipulating items in the back seat.  *Id.*  Plaintiff leaned off the vehicle, glanced at Officer Foreman who was still clearing the back seat, and began walking briskly away from Officer Foreman's custody.  *Id.*  Officer Foreman looked up from the back seat, realized Plaintiff was leaving his immediate custody, and

10

grabbed Plaintiff by the back of her shirt.  *Id.*  Plaintiff fell to the ground in the process[4].  *Id.*

Officer Foreman uncuffed Plaintiff and allowed her to regain her footing before re-cuffing her wrists in front of her body, and placing her in the patrol unit.  *See "Exhibit F,"* at pg. 54, lines 9-14.  She was on the ground for less than sixty (60) seconds.  *See "Exhibit C."*  Other than to remove the handcuffs, Officer Foreman did not touch, or attempt to touch Plaintiff during the brief time she remained on the ground.  *Id.*  Plaintiff was placed in the patrol unit and taken to the Waveland Police Department without further incident.  *See "Exhibit A."*

### i. Plaintiff's Arm Injuries

The first instance of excessive force allegedly occurred when Officer Foreman grabbed Plaintiff's arm and cuffed her to effectuate the arrest.  *Id.*  First, given the facts in the record, Plaintiff was informed she was under arrest while still in her vehicle.  *See "Exhibit F,"* at pg. 32, lines 11-16.  That Officer Foreman took hold of Plaintiff's arm to remove her from the vehicle is entirely reasonable, given that she was being placed under arrest.  The 5th Circuit is littered with cases indicating that handling and cuffing of individuals being arrested based on probable cause is not objectively unreasonable.  *Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007); *Tarver v. City of Edna*, 410 F. 3d 745 (5th Cir. 2005).

Moreover, to state a claim for excessive force, the injury alleged must be more than *de minimis*.  *Gore*, 483 F.3d 404 (5th Cir. 2007).  The 5th Circuit has previously held that incidental injuries associated with handcuffing an individual, such as bruising on the arms and wrists, do not

---

[4]

During deposition, Plaintiff attempted to fabricate reasons she began walking away from Officer Foreman's custody. Among those reasons were: 1) Matt Foreman was on the opposite side of the patrol unit opening the door, and 2) she was unaware Officer Foreman intended for her to enter the vehicle on the driver side, as he had not opened any doors.  *See "Exhibit F,"* at pg. 47, lines 8-24. The video indicates clear contradiction of her sworn testimony.  *See "Exhibit C."*

give rise to a constitutional claim for excessive force.  Id at 417.  As such, summary judgment should be granted with regard to Plaintiff's alleged arm injuries.

### ii. Plaintiff's Fall

Plaintiff also claims she was injured when Officer Foreman grabbed her shirt and pulled her to the ground as she was walking away from him at the patrol car.  *See "Exhibit A."*  The attached video clearly shows Officer Foreman opening the rear driver door and moving items inside the vehicle for Plaintiff's entry.  *See "Exhibit C."*  Plaintiff then leaned off the vehicle, looked at Officer Foreman, turned around, and walked briskly away from Officer Foreman.  *Id.*  Once Officer Foreman saw Plaintiff leaving the immediate area of his custody, he grabbed her shirt and she fell to the ground.  *Id.*  Contrary to Plaintiff's testimony, the surveillance shows that Matt Foreman was not on the opposite side of the vehicle opening the door.  *Id.*  In similar contradiction to Plaintiff's sworn testimony, Officer Foreman never made a kicking gesture at Plaintiff once she was on the ground. *Id.*  Instead, she was uncuffed, allowed to stand, and assisted into the patrol unit without further incident.  *Id.*

Use of some force is universally accepted to detain an arrested individual attempting to leave or flee the custody of an officer.  The question, under the 4th Amendment, is whether the force used is objectively unreasonable given the totality of the circumstances.  *U.S. v. Powell*, 137 Fed.Appx. 701, 2005 WL 1510936 (5th Cir. 2005).  In clarifying the parameters of "objective reasonableness," the Supreme Court stated that courts must determine whether a particular use of force is reasonable based on "the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

In this case, the surveillance clearly shows Plaintiff walking away from Officer Foreman's

custody. *See "Exhibit C."* Plaintiff's efforts to explain her actions through false testimony are contradicted by the attached surveillance. *Id.* Thus, without justification, Plaintiff, while cuffed and under arrest, began walking away from Officer Foreman's immediate custody. *Id.* In response, Officer Foreman grabbed Plaintiff by the shirt and she fell to the ground. *Id.*

Under certain circumstances, use of extreme force is "objectively reasonable" to detain a fleeing criminal, including use of deadly force. *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007). In this instance, the facts before the Court indicate Plaintiff was leaving the custody of Officer Foreman when he grabbed her by the shirt. *See "Exhibit C."* The 5th Circuit has ruled that grabbing a fleeing individual is "objectively reasonable," even when the resulting injuries are dire. *Holmes v. City of Bastrop*, 141 Fed.Appx. 315, 2005 WL 1793018 (5th Cir. 2005). As such, Defendants move this Court to hold that Officer Foreman's actions under the circumstances which led to Plaintiff's fall were objectively reasonable, and thus not actionable under the Fourth Amendment.

### iii. Plaintiff's Alleged Injuries at the Police Station

Plaintiff concedes she was transported to the station by Officer Foreman without further incident. Once at the station, Plaintiff admits Officer Foreman summoned paramedics to treat the contusions on her arms. *See "Exhibit F,"* at pg. 71, lines 2-5. While at the station, Plaintiff claims Officer Foreman removed and rammed a chair into the back of her legs. *See "Exhibit F,"* at pg. 73, lines 5-23. This allegation is contested by Defendants, but for purposes of this motion, will be taken as true.

When asked if she was injured during the chair episode, Plaintiff responded, "No. Just the backs of my legs were a little bit tender when I got home, but other than that, no." *See "Exhibit F,"* at pg. 73, lines 21-23. She also admitted her legs neither bruised nor bled from the incident. *See*

*"Exhibit F,"* at pg. 75, lines 15-17.

Again, to state a claim for excessive force, the injury alleged must be more than *de minimis*. *Gore*, 483 F.3d 404 (5th Cir.2007). Mere bruising does not rise above the *de minimis* standard. Id at 417. As such, injuries so minor they fail to result in bruising cannot constitute excessive force. *Id.* Therefore, Defendants move for summary judgment regarding any "injuries" Plaintiff allegedly suffered at the police station.

### (2) Officer Foreman is Entitled to Qualified Immunity on the Claims of Excessive Force

As noted above, the defense of qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As cited above, there are numerous instances in which the 5th Circuit has affirmed the constitutionality of the exact actions taken by Officer Foreman in the instant case. *Freeman v. Gore*, 483 F.3d 404 (5th Cir.2007); *Tarver v. City of Edna*, 410 F. 3d 745 (5th Cir.2005); *Holmes v. City of Bastrop*, 141 Fed.Appx. 315, 2005 WL 1793018 (5th 2005). As such, his conduct cannot be deemed violative of any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. 800, 818 (1982). Therefore, Officer Foreman is entitled to qualified immunity on the claims of excessive force.

### C. Fifth and Fourteenth Amendments: Equal Protection

Plaintiff has not alleged she was discriminated against for being a member of some protected class. *See "Exhibit A."* Rather, it appears she seeks compensation under the "class of one" theory. *Id.*

14

Under the standard set out in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), for a "class of one" claim to withstand summary judgment, [a plaintiff] must have established genuine questions of material fact as to whether 1) 'she was intentionally treated differently from those similarly situated' ... and 2) ... 'that there [was] no rational basis for the difference in treatment.'

*Whiting v. University of Southern Mississippi*, 451 F.3d 339, 348 (5th Cir. 2006).

Plaintiff has put forth no allegations or evidence she was intentionally treated differently from those similarly situated. Nor has she asserted the lack of rational basis for any such difference in treatment. As such, summary judgment should be granted as to Plaintiff's equal protection claims under the Fifth and Fourteenth Amendments.

### D. Fifth and Fourteenth Amendments: Due Process

Constitutional due process guarantees "a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty." *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir. 1985). An arrest or detention may be unlawful if it is accomplished without due process of law as required by the Constitution. *Baker v. McCollan*, 443 U.S. 137, 144-145 (1979). If probable cause exists to make an arrest, no violation of due process rights exists based on said arrest. *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992).

In this case, Plaintiff claims violation of her due process rights as a result of her arrest. *See "Exhibit A."* However, Plaintiff concedes she was illegally parked in a fire lane and thus subject to arrest. *See "Exhibit A"* and *"Exhibit F," pg. 21, lines 2-8.* As such, probable cause existed to arrest Plaintiff, and no claim for denial of due process can survive.

### E. Eighth Amendment: Cruel and Unusual Punishment

According to the U.S. Supreme Court, protection from cruel and unusual punishment does

15

not vest in an individual until such time as they are convicted of a crime, enter a plea of guilty, or become a pretrial detainee. *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Plaintiff's allegations revolve around incidents occurring prior to conviction or plea. *See "Exhibit A."* Plaintiff arguably became a pretrial detainee when she was ultimately arrested and brought to the police station for booking. As such, any actions by Officer Foreman prior to Plaintiff being placed into custody at the police station are not actionable under the Eighth Amendment. *Ingraham*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Insofar as Plaintiff is making claims for actions taken by Officer Foreman at the police station, her alleged injuries resulting from any such encounters are admittedly *de minimis* as discussed at length in prior sections. Therefore, the Court should grant summary judgment on Plaintiff's claims under the Eighth Amendment for cruel and unusual punishment.

### F. Municipal Liability for Actions of Officer Foreman

### (1) Policies, Practices, or Customs

As has been demonstrated herein, no constitutional violations occurred during the subject incident, therefore the City of Waveland cannot be held liable under 42 U.S.C. § 1983. However, if found otherwise, the City of Waveland still cannot be held liable as Plaintiff has failed to provide evidence of specific policies which led to the alleged constitutional violations.

Plaintiff has made a general allegation in the Complaint that Officer Foreman's actions "were pursuant to policy, practice, and/or custom ... of the City of Waveland, Mississippi." *See "Exhibit A."* Plaintiff has wholly failed to cite any policies implemented, in effect, and/or followed during the subject incident. *Id.*

Under the decisions of the Supreme Court and the 5th Circuit with regard to 42 U.S.C. § 1983,

"municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy or custom[5]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing, *Monell v. Dep't. Of Social Sciences*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L.Ed. 2d 611 (1978)). Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Piotrowski*, 237 F.3d at 578. This, the Court explained, means that there must be both municipal culpability and causation. *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). Culpability includes both the involvement of a municipal policymaker *and* affirmative municipal action. *Id.*

In the instant case, Defendants do not contend Plaintiff failed to name a "policymaker." Rather, the second and third prongs of the equation are lacking. To begin, Plaintiff has failed to bring forth evidence that any alleged constitutional violations were undertaken pursuant to a specific custom or policy of the municipality. Municipal policy for purposes of § 1983 liability may consist of:

> 1) A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge

---

[5] The Fifth Circuit in *Piotrowski* defines official policy as that contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom, that is: "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."

> of such custom must be attributable to the governing body of the
> municipality or to an official to whom that body had delegated
> policy-making authority.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

In other words, mere recitation of policies in the Complaint will not suffice. However, Plaintiff has failed to cite *any* policy leading directly to the allegations set forth in the Complaint. Furthermore, no evidence has been offered to prove that any alleged policy was either an officially promulgated policy or so persistent and widespread that it became a pattern or custom within the City of Waveland Police Department. For these reasons, the motion for summary judgment should be granted regarding this claim.

In discussing the third element above in more detail, the Fifth Circuit explains that the municipal policy must cause the violation of another's rights.

> [Section 1983] imposes liability on a government that, under color of some official
> policy, **'caused' an employee to violate another's constitutional rights**. . .Indeed,
> the fact that Congress did specifically provide that A's tort became B's liability if B
> "causes" A to subject another to a tort, suggests that Congress did not intend § 1983
> liability to attach where such causation was absent.

*Monell*, 436 U.S. at 692; *Piotrowski*, 237 F.3d at 578. The Court also noted that each and any policy which allegedly caused constitutional violations must be *specifically identified* by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional. *Id.* Finally, the 5th Circuit opined as follows: "in order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a decision by the city itself to violate the Constitution. *Snyder*, 142 F.3d at 796. Plaintiff has failed to bring forth evidence of any official policy or custom, or that any claimed policy or custom was the "moving force" behind the Plaintiff's alleged constitutional violations. As such, summary judgment on this claim must be granted in favor of the

City of Waveland.

## (2) Failure to Properly Train

Plaintiff also claims the City of Waveland negligently trained, supervised, retained, and hired Officer Foreman.  The 5th Circuit has stated,

> [i]n order to hold a municipality liable under § 1983 for its employees' acts, a plaintiff must show that a policy of hiring or training caused those acts.  Such a showing requires proof that (1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury.

*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *City of Canton v. Harris*, 489 U.S. 378, 385-87 (1989).  In the instant case, the Plaintiff has failed to provide specific facts regarding any of the *Baker* elements requisite to finding liability on behalf of the City.  In the same manner as described above, Plaintiff has failed to bring forth any evidence to date regarding policies, written or otherwise, that led to any alleged constitutional violations.  As such, summary judgment should be granted in favor of the City on this claim.

## V. Conclusion

The facts in this matter are undoubtedly disputed.  However, given the existence of the attached video, the true nature of events has emerged.  Based on the facts present in the surveillance, coupled with those undisputed in the record, Defendants are entitled to summary judgment on every count in the Complaint.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request this Honorable Court grant this Motion for Summary Judgment.  Defendants further request any additional relief this Court deems just.

Respectfully submitted, this the 15th day of September, 2011.

19

CITY OF WAVELAND, MS AND OFFICER
TRAVIS FOREMAN, Defendants


BY: /s/ *Joshua W. Danos*
Joshua W. Danos (MSB# 101501)
Nathan A. Bosio (MSB# 100185)
DOGAN & WILKINSON, PLLC
Post Office Box 1618
Pascagoula, MS 39568-1618
228-762-2272
228-762-4145 fax
jdanos@dwwattorneys.com


### CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2011, I electronically filed the foregoing with the Clerk

of the court using the ECF system which sent notification of such filing to the following:

> David C. Frazier, Esq.
> Frazier Law Firm, PLLC
> Pascagoula, MS 39568-1170

/s/ *Joshua W. Danos*
JOSHUA W. DANOS


JOSHUA W. DANOS MSB #101501
NATHAN A. BOSIO, MSB # 100185
DOGAN & WILKINSON, PLLC
734 Delmas Avenue
Post Office Box 1618
Pascagoula, MS 39568-1618
(228) 762-2272 - PHONE
(228) 762-4145 - FAX