**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**MARGARET A. PETERS**                                    **PLAINTIFF**

**VERSUS**                            **CIVIL ACTION NO. 1:10cv569 LG-RHW**

**CITY OF WAVELAND, MISSISSIPPI, a Municipal**
**Corporation, and OFFICER TRAVIS FOREMAN**                **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER RESPONSE TO THE**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**COMES NOW**, the Plaintiff, Margaret A. Peters, by and through her attorneys of record

herein, pursuant to ***Rule 56(c)***, ***Federal Rules of Civil Procedure*** and files this, the *Plaintiff's*

*Memorandum in Support of Her Response to the Defendants' Motion for Summary Judgment,* as

follows to wit:

### I. Introduction

The Plaintiff agrees with the information provided by the Defendants in their Introduction.

On or about March 17, 2008, and at all times material herein, the Plaintiff was parked on the

westward end near/in the fire lane in front of Wal-mart Super Center, located at 460 Highway 90,

Waveland, Hancock County, Mississippi. The Defendant, Officer Travis Foreman, while on ano-

ther call to the store, spotted the Plaintiff and yelled at her to move her van or get a ticket.  The

Plaintiff yelled back to Foreman as she got back into her van to move it.  Foreman then approached

the Plaintiff's vehicle and said that she had an attitude, yelled for his ticket book and began

assaulting her. During the course of this incident, while the Plaintiff was not engaged in any criminal

activity, Foreman assaulted the Plaintiff by grabbing her left arm and jerking her out of her motor

vehicle, whereupon Foreman broke the skin on the Plaintiff's arm causing the Plaintiff's arm to

bleed profusely. Upon the Plaintiff informing Foreman that he was hurting her, his response was to jerk back both of her shoulders and handcuff her behind her back, bruising her hands and wrists. Then as the Plaintiff was attempting to go around and get into his patrol car, Officer Foreman pulled the Plaintiff by her shirt causing her to fall onto the concrete walkway. The Plaintiff told Officer Foreman that she had undergone surgery a few months earlier and that she was not able to get herself off the ground. Officer Foreman told her she was lying and would not help the Plaintiff back to her feet. Officer Foreman then refused to allow the Plaintiff medical attention when she expressly asked Officer Foreman several times to take her to the hospital for her injuries. While at the police station, Officer Foreman assaulted the Plaintiff again by pulling her chair from under several times, pushing the chair under her hard several times when she tried to sit, again causing the Plaintiff to fall and sustain injuries.  (See Plaintiff's Exs. "A, C, D, & G")

The excessive use of force committed by Foreman, occurred while he was acting pursuant to policy, practice and/or custom, as a police officer with the City of Waveland, Mississippi Police Department, thereby causing the Plaintiff to sustain injuries to her body.  In this respect, the Defendant, City of Waveland,  failed to adequately train, supervise, and/or also take the necessary and appropriate disciplinary corrective actions against Officer Travis Foreman, pursuant to said policy.  (See Plaintiff's Ex. "B") Particularly, the  Plaintiff has sustained injuries to her neck, back, hands and wrists and numerous contusions throughout her body, which have caused her to endure medical treatments, including epidural steroid injections, all of which having caused her to experience severe mental distress and emotional anguish.  In this respect, the acts and omissions described herein were malicious, or in the alternative, deliberately indifferent and in reckless disregard to the safety needs of the Plaintiff, and clearly excessive.

## II. Summary Judgment Authority

### A. Federal Rule of Civil Procedure 56

Although the Defendants give a "general" reference to the application of summary judgment in the federal courts, the fact is that ever since the Mississippi Supreme Court adopted the *Rules of Civil Procedure*, it has cautioned trial courts not to grant motions for summary judgment, unless the trial court finds beyond a/or any "reasonable doubt" that the Plaintiff would be unable to prove any genuine issues as to material facts[1], thereby creating an objective criteria.

---

[1]*PHE, Inc., v. State 877 So. 2nd 1244(Miss 2004); Robinson v. Cobb 763 So. 2nd. 883* (Miss. 2000);
*Williams v. Toliver,* 759 So. 2nd 1195 (Miss. 2000);
*Mississippi Transp. Comm'n v. Ronald Adams Contr., Inc.,* 753 So. 2nd 1077 (Miss 2000);
*Rush v. Casino Magic Corp.,* 744 So. 2nd 761 (Miss. 1999);
*McDonald v. Mississippi Power Co.,* 732 So. 2nd 896 (Miss. 1999);
*Lumberman's Underwriting Alliance v. City of Rosedale,* 727 So. 2nd 710 (Miss. 1998);
*Franklin v. Thompson,* 722 So 2nd 688 (Miss. 1998);
*One Charter Arms v. State ex rel. Moore,* 721 So. 2nd 620 (Miss. 1998);
*Burton v. Choctaw County,* 730 So. 2nd 1 (Miss. 1997);
*Downs v. Choo,* 656 So. 2nd 84 (Miss. 1995);
*Ales v. Ales,* 650 So. 2nd 482 (Miss. 1995);
*Yowell v. James Harkins Builder, Inc.,* 645 So. 2nd 1340 (Miss. 1994);
*White v. Mills,* 1998 97 CA 00064 (Miss. App.)
*Davidson v. North Cent. Parts*, 737 So. 2nd 1015 (Miss. COA 1998);
*Yazoo Properties v. Katz & Besthoff* No. 284, 644 So. 2nd 429 (Miss. 1994);
*Triplett v. Dempsey*, 633 So. 2nd 1011 (Miss. 1994);
*Daniels v. GNB, Inc.*, 629 So. 2nd 595 (Miss. 1993);
*McFadden v. State*, 580 So. 2nd 1210 (Miss. 1991);
*Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2nd 465 (Miss. COA 2003);
*Branch v. State Farm Fire & Casualty Co.*, 759 So. 2nd 430 (Miss. COA 2000);
*Wininger v. Ameristar Casino, Inc*., 760 So. 2nd1 (Miss. COA 1999);
*Ferrell v. River City Roofing, Inc*., 912 So. 2nd 448 (Miss. 2005);
*Hill Bros. Constr. & Eng'g Co. v. Miss. Transp. Comm'n*, 909 So. 2nd 58 (Miss. 2005);
*Hill Bros. Constr. & Eng'g Co. v. Miss. Transp. Comm'n*, 2003 CA 02596 (Miss App.);
*Montgomery v. Woolbright*, 904 So. 2nd 1027 (Miss. 2004);Simpson v. Boyd, 880 So. 2nd 1047 (Miss. 2004);
*Turner v. Hudson Salvage*, 709 So. 2nd 425 (Miss. 1998)
*Travis v. Stewart*, 680 So. 2nd 214 (Miss. 1996);
*Downs v. Choo*, 656 So. 2nd 84 (Miss. 1995);

In considering a Motion for Summary Judgment, "[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Yowell v. James Harkins Builder, Inc.,* 645 So.2d 1340, 1343 (Miss. 1994). Further, the Mississippi Supreme Court has emphasized that "a motion for summary judgment should be denied unless the trial court finds, **beyond any reasonable doubt,** that the Plaintiff would be unable to prove any facts to support his claim." *Id.* at 1343 (emphasis added). *See also Robinson v. Cobb,* 763 So.2d 883 (Miss., Jul 20, 2000); *Williams v. Toliver,* 759 So.2d 1195 (Miss., May 11, 2000); *Mississippi Transp. Comm. v, Ronald Adams Contractor, inc.,* 753 So.2d 1077 (Miss., Feb 17. 2000); *Rush v. Casino Magic Corp.,* 744 So.2d 761 (Miss., Jul 01, 1999); *McDonald v. Mississippi Power Co.,* 732 So.2d 893 (Miss., Jan. 14, 1999); *Lumberman's Underwriting Alliance v. City of Rosedale,* 727 So.2d 710 (Miss., Dec 31, 1998); *Franklin v. Thompson,* 722 So.2d 688 (Miss., Nov 12, 1998); *One (1) Charter Arms, Bulldog 44 Special, Serial No. 794774 v. State ex rel. Moore,* 721 So.2d 620 (Miss., Aug 27, 1998; *Turner v. Hudson Salvage, Inc.,* 709 So.2d 425 (Miss., Mar 12, 1998); *Travis v. Stewart,* 680 So.2d 214 (Miss., Sep 26, *1996); Downs v. Choo,* 656 So.2d 84 (Miss., May 11, *1995); Palmer v. Anderson Infirmary Benev. Ass'n, 656* So.2d 790 (Miss., Feb 23, *1995; Ales v. Ales, 650* So.2d 482 (Miss., Feb. 2, *1995; Yazoo Properties v. Katz & Besthoff No. 284, Inc.,* 644 So.2d 429 (Miss., Oct 13, 1994); *Triplett v. Dempsey,* 633 So.2d 1011 (Miss., Feb 3, *1994); Daniels v. GNB, Inc.,* 629 So.2d 595 (Miss., Dec 16, 1993); *Skelton By and Through Roden v. Twin County Rural Elec. Ass*

---

*Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2nd 790 (Miss. 1995);
*Skelton v. Twin County Rural Electric Ass'n*, 611 So. 2nd 931 (Miss. 1992);
*McCoy v. City of Florence*, 2005 CA 00803 (Miss. App.);
*Glinsey v. Newsom*, 911 So. 2nd 661 (Miss. COA 2005);
*Baldwin v. Holliman*, 913 So. 2nd 400 (Miss. COA 2005);

*'n,* 611 So.2d 931 (Miss., Dec 31, 1992).

> All motions for summary judgment should be viewed with great skepticism
>
> and if the trial court is to err, it is better to err on the side of denying the motion." *Daniels v. GND, Inc.,* 629 So.2d *595, 599* (Miss. 1993). A motion for summary judgment should be overruled unless the trial court finds **beyond any reasonable doubt,** that the Plaintiff would be unable to prove any facts to support his claim. ***Id.*** (emphasis added)
>
> The party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a matter of law. The burden of showing this is one of production and persuasion, not of proof. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under M.R.C.P. 56(c). An issue of fact may be present where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted evidentiary facts, or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed. (citations omitted)

*Burton v. Choctaw County, Mississippi, et al,* 730 So.2d 1, 3 (Miss. 1997).

Even when there is no factual dispute, summary judgment is inappropriate if the parties disagree regarding the material factual inferences that properly may be drawn from the facts. *Dennis v. Searle, 457* So.2d 941, 944 (Miss. 1984); *Winters v. Highlands Inc. Co.,* 569 F.2d 297, 299 (5th Cir. 1978). A fact is "material" if it tends to resolve any of the issues that have been properly raised by the parties. *Pearl River Co. Board of Supervisors v. South East Collections Agency, 459* So.2d 783, 785 (Miss. 1984).

The power to grant summary judgment is not discretionary with the trial court. The Rule 56(c) test must be met in all cases. The requirements of summary judgment are strictly construed to insure a litigant that factual issues will be determined by the "truth-seeking procedure of a trial". See

*Brown v. Credit Center, Inc., supra,* at 362; *Vickers v. First Mississippi National Bank, supra,* at 1061; *Dennis v. Searle, supra,* at 785; *Southern Distributing Co., Inc. v. Southdown, Inc.,* 574 F.2d 824, 826(5th Cir. 1978).  Thus, it must be kept in mind that the non-moving party is vested with a right of trial by jury by the *U. S. Const.,* Amend. VII and *Miss. Const.,* Art. 3, §31 (1890). *Brown v. McQuinn,* 501 So.2d 1093, 1094 (Miss. 1986); *Miss. Moving & Storage Co. v. Western Electric Co.,* 498 So.2d 340,342 (Miss. 1986); *Vickers v. First Mississippi National Bank, supra,* at 1061; *Brown v. Credit Center, Inc., supra,* at 362.

Where there is a doubt about the motion, the Supreme Court has counseled caution, that the trial court generally should err on the side of denying the motion and allowing full trial on the merits. *Ratliff v. Ratliff* 500 So.2d 981 (Miss. 1986); *Brown v. McQuinn, supra,* at 1095. "Where there is the slightest doubt over whether a factual issue exists, the court should resolve in favor of the non-moving party." *Rein v. Benchmark Construction Company,* NO. 2001 -CA-0 1 885-SCT at ¶24 (Miss. 06/12/2003). *See also Cothern v. Vickers, Inc.,* 759 So.2d 1241, 1245 (Miss. 2000).

### B. Issues of Disputed Fact When Video Footage is Available

The Plaintiff does not take issue with the legal analysis set forth by the Defendants. However, as will be discussed hereinbelow, the Plaintiff does have a different interpretation of what "appears" in the video.  .  **(NOTE: The Plaintiff objects to the use of the video referred to by the Defendants in that it is heavily encrypted, and therefore unusable by the Plaintiff.  In this respect, counsel for the Plaintiff was allowed a brief viewing of the video at defense counsel's office. Therefore, the responses below, are based upon counsel's best recollection.)**

**III. Facts in the Record:**
**Undisputed Facts, Affirmative Matters, Plaintiff's Version of Event,**

**and The Surveillance Footage**

**A. "Undisputed" Facts & Affirmative Matters**

In response to section III.A. of the Memorandum, the Plaintiff would respond subparagraph by subparagraph as follows:

1.    In response to subparagraph 1., the Plaintiff admits same.

2.    In response to subparagraph 2., the Plaintiff admits same.

3.    In response to subparagraph 3., the Plaintiff admits same.

4.    In response to subparagraph 4., the Plaintiff denies same. As an affirmative matter, the Plaintiff would state that Foreman began yelling at the Plaintiff unnecessarily. (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

5.    In response to subparagraph 5., the Plaintiff admits same.

6.    In response to subparagraph 6., the Plaintiff admits same. As an affirmative matter, the Plaintiff would state that the Plaintiff was attempting to locate her driver's license. (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

7.    In response to subparagraph 7., the Plaintiff denies same. As an affirmative matter, the Plaintiff would state that Foreman "grabbed my arm and began pulling and twisting it." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

8.    In response to subparagraph 8., the Plaintiff admits same. The Plaintiff would add that she "then yelled 'dammit,' (sic) you're hurting me! At that time the skin on my arm tore open and blood was everywhere! He then stopped twisting my arm and I was able to then get out

of my van." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

9.      In response to subparagraph 9., the Plaintiff admits same. The Plaintiff would add that she "then yelled 'dammit,' (sic) you're hurting me! At that time the skin on my arm tore open and blood was everywhere! He then stopped twisting my arm and I was able to then get out of my van." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

10.      In response to subparagraph 10., the Plaintiff admits to the first sentence, but denies the allegations contained in the second sentence. As an affirmative matter, the Plaintiff would add that she informed Foreman that she had just had surgery, and that she was crying out in pain and could not move fast; and that Foreman told her "to shut up and stop lying." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

11.      In response to subparagraph 11., the Plaintiff denies same.

12.      In response to subparagraph 12., the Plaintiff admits same. As an affimative matter, the Plaintiff would state: "We got to the police car and Officer Foreman told me to get in. He didn't open the door so I thought he meant for me to get in on the other side. I got half was (sic) around the car when he pulled me by my shirt me (sic) yanked me back real hard and at this point I fell down on the cement." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

13.      In response to subparagraph 13., see response to subparagraph 12., herein-above.

14.      In response to subparagraph 14., the Plaintiff admits same, but only after the Plaintiff "begged Officer Foreman to take at least one of the handcuffs off so that I could help myself up." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

15.      In response to subparagraph 15., the Plaintiff admits same.

16.     In response to subparagraph 16., the Plaintiff admits same.

17.     In response to subparagraph 17., the Plaintiff admits same.  However, the Plaintiff would affirmatively state: (1) that at all times material herein, James Varnell, served in the role as Chief of Police for the Defendant, City of Waveland; (2) that as police chief, Varnell was the policymaker for the Waveland police department; and (3) that on or about September 1, 2011 counsel for the Plaintiff received a facsimile of an August 16, 2011 letter of termination on Police Chief, James Varnell, from defense counsel in another case, *Jez v. City of Waveland, et al.*, Civil Action No. 1:10cv00570 LG-RHW, wherein it is stated in effect, that Varnell was being terminated from his position as Chief of Police for the Defendant, City of Waveland, for a number of reasons/failures, amounting to a policy, practice and custom as a moving force for constitutional violations in his role as a policymaker for the Waveland, Mississippi police department.  (See Plaintiff's Ex. "B")  As Chief of Police, Varnell was a "municipal policymaker" since at all times he had the "responsibility for . . . setting policy" within the City of Waveland's Police Department. *See Valle v. City of Houston*, 613 F.3d 526, 542 (5th Cir. 2010).  Whether Varnell's acts and omissions were a result of a failure to train, supervise, and/or retain Foreman and other troubled officers is a question which should be left to the trier of fact for determination.

18.     In response to subparagraph 18., the Plaintiff admits same.  However, the Plaintiff would affirmatively state: (1) that at all times material herein, James Varnell, served in the role as Chief of Police for the Defendant, City of Waveland; (2) that as police chief, Varnell was the policymaker for the Waveland police department; and (3) that on or about September 1, 2011 counsel for the Plaintiff received a facsimile of an August 16, 2011 letter of termination on Police Chief, James Varnell, from defense counsel in another case, *Jez v. City of Waveland, et al.*, Civil

Action No. 1:10cv00570 LG-RHW, wherein it is stated in effect, that Varnell was being terminated from his position as Chief of Police for the Defendant, City of Waveland, for a number of reasons/failures, amounting to a policy, practice and custom as a moving force for constitutional violations in his role as a policymaker for the Waveland, Mississippi police department.  (See Plaintiff's Ex. "B")  As Chief of Police, Varnell was a "municipal policymaker" since at all times he had the "responsibility for . . . setting policy" within the City of Waveland's Police Department. *See Valle v. City of Houston*, 613 F.3d 526, 542 (5th Cir. 2010).  Whether Varnell's acts and omissions were a result of a failure to train, supervise, and/or retain Foreman and other troubled officers is a question which should be left to the trier of fact for determination.

19.    In response to subparagraph 19., the Plaintiff admits same.  However, the Plaintiff would affirmatively state: (1) that at all times material herein, James Varnell, served in the role as Chief of Police for the Defendant, City of Waveland; (2) that as police chief, Varnell was the policymaker for the Waveland police department; and (3) that on or about September 1, 2011 counsel for the Plaintiff received a facsimile of an August 16, 2011 letter of termination on Police Chief, James Varnell, from defense counsel in another case, *Jez v. City of Waveland, et al.*, Civil Action No. 1:10cv00570 LG-RHW, wherein it is stated in effect, that Varnell was being terminated from his position as Chief of Police for the Defendant, City of Waveland, for a number of reasons/failures, amounting to a policy, practice and custom as a moving force for constitutional violations in his role as a policy-maker for the Waveland, Mississippi police department.  (See Plaintiff's Ex. "B")  As Chief of Police, Varnell was a "municipal policymaker" since at all times he had the "responsibility for . . . setting policy" within the City of Waveland's Police Department. *See Valle v. City of Houston*, 613 F.3d 526, 542 (5th Cir. 2010).  Whether Varnell's acts and

omissions were a result of a failure to train, supervise, and/or retain Foreman and other troubled

officers is a question which should be left to the trier of fact for determination.

### B. Plaintiff's Version of Event

In response to section III.B. of the Memorandum, the Plaintiff would respond subparagrap

by subparagraph as follows:

1.     In response to subparagraph 1., the Plaintiff denies same.  (Plaintiff's Exs.

"A", Response to Interrogatory 3 and "G")

2.     In response to subparagraph 2., the Plaintiff admits same.

3.     In response to subparagraph 3., the Plaintiff admits same.

4.     In response to subparagraph 4., the Plaintiff admits same.

5.     In response to subparagraph 5., the Plaintiff admits same.

6.      In response to subparagraph 6., the Plaintiff admits same.

7.      In response to subparagraph 7., the Plaintiff admits same.

8.      In response to subparagraph 8., the Plaintiff admits same.  In addition, the

Plaintiff would state Foreman "didn't open the door so I thought he meant for me to get in on the

other side." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

9.     In response to subparagraph 9., the Plaintiff admits same.

10.      In response to subparagraph 10., the Plaintiff denies same.  As an affirma-

tive matter, the Plaintiff would state that "when he pulled me by the shirt me (sic) yanked me back

real hard and at this point I fell down on the cement."   (Plaintiff's Exs. "A", Response to

Interrogatory 3 and "G")

11.      In response to subparagraph 11., the Plaintiff denies same.  (Plaintiff's Exs.

"A", Response to Interrogatory 3 and "G")

      12.     In response to subparagraph 12., the Plaintiff admits same.

      13.     In response to subparagraph 13, the Plaintiff admits that Foreman pulled the chair out from under the Plaintiff and rammed it against her legs.  However, the Plaintiff denies the remaining allegations contained therein, in whole and in part.  (See Plaintiff's Exs. "A, C, D, & G")

### C. Surveillance Footage From Wal-Mart

In response to section III.C. of the Memorandum, the Plaintiff would respond subparagraph by subparagraph as follows: **(NOTE: The Plaintiff objects to the use of the video referred to by the Defendants and provided to the Plaintiff] in that it is heavily encrypted, and therefore unusable by the Plaintiff.  In this respect, counsel for the Plaintiff was allowed a brief viewing of the video at defense counsel's office. Therefore, the responses below, are based upon counsel's best recollection.)**

      1.     In response to subparagraph 1., the Plaintiff admits same.

      2.     In response to subparagraph 2., the Plaintiff denies same.  In this respect, the Plaintiff would reiterate that immediately after handcuffing her, is when Foreman "began to pull me up and towards his patrol car."  (Plaintiff's Ex. "A", Response to Interrogatory 3)

      3.     In response to subparagraph 3., the Plaintiff is without sufficient information to admit or deny the assertions made by the Defendants, and therefore, denies same.

      4.     In response to subparagraph 4., the Plaintiff is without sufficient information to admit or deny the assertions made by the Defendants, and therefore, denies same.

      5.     In response to subparagraph 5., the Plaintiff is without sufficient information to admit or deny the assertions made by the Defendants, and therefore, denies same.

6.     In response to subparagraph 6., the Plaintiff is without sufficient information to admit or deny the assertions made by the Defendants, and therefore, denies same.

7.      In response to subparagraph 7., the Plaintiff denies same, except, the Plaintiff does admit that as she started to walk towards the other side of the patrol car, when Foreman "pulled me by my shirt me (sic) yanked me back real hard and at this point I fell down on the cement." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

8.      In response to subparagraph 8., the Plaintiff denies same, except, the Plaintiff does admit that as she started to walk towards the other side of the patrol car, when Foreman "pulled me by my shirt me (sic) yanked me back real hard and at this point I fell down on the cement." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

9.      In response to subparagraph 9., the Plaintiff denies same, except, the Plaintiff does admit that as she started to walk towards the other side of the patrol car, when Foreman "pulled me by my shirt me (sic) yanked me back real hard and at this point I fell down on the cement." (Plaintiff's Exs. "A", Response to Interrogatory 3 and "G")

10.    In response to subparagraph 6., the Plaintiff is without sufficient information to admit or deny the assertions made by the Defendants, and therefore, denies same.

### IV. Argument and Authority

### A.  Fourth Amendment: Unreasonable Seizure

### (1) Officer Foreman's Seizure Was *Not* Objectively Reasonable

The Plaintiff admits to the legal authorities cited by the Defendants in support of their contention that Foreman was entitled to conduct a "seizure" of the Plaintiff since parking in a fire  lane is technically a crime.  However, as will be discussed hereinbelow, the manner in which the "seizure"

was conducted was objectively unreasonable, and therefore, clearly excessive.  "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  *Scott v. Harris,* 550 U. S. 372, 383 (2007).


### (2) Officer Foreman Is *Not* Entitled to Qualified Immunity

The Plaintiff admits to the legal authorities cited by the Defendants in support of their contention that Foreman was entitled to conduct a "seizure" of the Plaintiff since parking in a fire  lane is technically a crime.  However, the manner in which the "seizure" was conducted was objectively unreasonable, and therefore, clearly excessive.

> The qualified immunity analysis involves a two step inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right: and (2) whether that right was clearly established at the time of the alleged misconduct. * * * A defendant will not be immune if, on an objective basis, it is obvious that no reasonable competent officer would have concluded that the defendant's actions were lawful; . . . .

> *      *      *      *

> "[A] Fourth Amendment seizure [occurs] . . . When there is a governmental termination of freedom of movement through means intentionally applied" [C]laims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonable' standard. . . . * * * Thus, at the time of this  incident, there existed a clearly established constitutional right to be free from the use of excessive force. (citations omitted)

*Green v. City of Moss Point, Civil Action 1:09cv638-HSO-JMR, slip op. p. 4* (9/13/2011 S.D. Miss.). (See Plaintiff's Ex. "F")

Therefore, contrary to the argument of the Defendants, the fact that Foreman had the right to make a "seizure" of the Plaintiff's person, does not automatically entitle him to qualified immunity. Rather, if there exists a genuine issue as to a material fact (which the Defendants cannot overcome beyond a reasonable doubt), as to whether Foreman's use of force against the Plaintiff was excessive, then there is no qualified immunity.   The Plaintiff's sworn answer to Interrogatory 3, her medical records/bills,  the photographs of her body bruises and abrasions, along with a quick perusal of her August 26, 2011 deposition, (See Plaintiff's Exs. "A, C,  D, & G") clearly show: (1) "injur[ies] [which are more than *de minimis*] that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008).  "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Scott v. Harris,* 550 U. S. 372, 383 (2007).  Further, **"this decision should not be made at the summary judgment stage.  Any credibility determination made between the officers' and [plaintiff's] version of events is inappropriate for summary judgment**." *Tarver v. City of Edna,* 410 F.3d 745, 753 (5th Cir. 2005).  (emphasis added)

### B. Fourth Amendment: Excessive Force

**(1) The Amount of Force Used During  Plaintiff's Arrest Was *Not* Objectively Reasonable**

A quick review of Plaintiff's Exhibits "A, C, D, & "G" clearly shows that  genuine issues as to material facts exist as to whether Foreman's "seizure/man-handling" committed against the Plaintiff during her arrest was excessive in the degree of force used, was objectively unreasonable,  and whether the arrest and resultant injuries therefore, violated the Fourth Amendment proscription

against excessive use of force.

> So too, in *Graham* we held that claims of excessive force in the course of an arrest or investigatory stop should be evaluated under the Fourth Amendment reasonableness standard, not under the "more generalized  notion of 'substantive due process.'" Because the degree of force used to effect a seizure is one determinant of its reasonableness, and because the Fourth Amendment guarantees citizens the right "to be secure in their persons. . . Against unreasonable . . . seizures," we held that a claim of excessive force in the course of such a seizure is "most properly characterized as one invoking the protections of the Fourth Amendment."

*United States v. James Daniel Good Real Property,* 510 U. S. 43, 51 (1993).  (citations omitted)

The Plaintiff's sworn answer to Interrogatory 3, her medical records/bills,  the photographs of her body bruises and abrasions, along with a quick perusal of her August 26, 2011 deposition, (See Plaintiff's Exs. "A, C,  D, & G") clearly show: (1) "injur[ies] [which are more than *de minimis*] that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable."  *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008).  "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  *Scott v. Harris,* 550 U. S. 372, 383 (2007).  Further, **"this decision should not be made at the summary judgment stage. Any credibility determination made between the officers' and [plaintiff's] version of events is inappropriate for summary judgment**."  *Tarver v. City of Edna,* 410 F.3d 745, 753 (5th Cir. 2005). (emphasis added)

### i., ii., & iii.  Plaintiff's Arm Injuries, Her Fall, and Injuries at the Police Station

Again, Plaintiff's Exhibits "A, C,  D, & G" clearly show that  genuine issues as to  material facts exist as to whether Foreman's "man-handling/seizure" committed against the Plaintiff during her

arrest, with the resulting injuries, was excessive in the degree of force used, was objectively unreasonable, and whether the arrest therefore, violated the Fourth Amendment proscription against excessive use of force.   The Plaintiff's sworn answer to Interrogatory 3, her medical records/bills, and the photographs of her body bruises and abrasions, along with a quick perusal of her August 26, 2011 deposition, (See Plaintiff's Exs. "A, C, D, G") clearly show:  "(1) injur[ies] [which are more than *de minimis*] that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008).  (citation omitted) To be sure, the photographs of the Plaintiff, along with the medical records and her deposition testimony, show clearly that the Plaintiff sustained injuries more than a mere bruising as the Defendants allege.   The record also reflects that the Plaintiff went to the Hancock County Medical Center emergency room the day following her release from custody complaining of head, spinal and arm/body pain.  Later, she underwent steroid/trigger point injections in her neck and for anxiety.  Lest it be forgotten, at the time of the incident in question, the Plaintiff was a **seventy year old woman**.  There is nothing in the facts to suggest that the Plaintiff was a threat to others (*See Scott, supra*) or that she was disobeying a lawful command**.**  Rather, her crimes were parking in a fire lane, yelling back at a thug wearing a badge, and  for not moving quickly enough to satisfy him.  This certainly does not allow Foreman and Waveland to avoid Fourth Amendment scrutiny.  Thus, **"this decision should not be made at the summary judgment stage. Any credibility determination made between the officers' and [plaintiff's] version of events is inappropriate for summary judgment**." *Tarver v. City of Edna,* 410 F.3d 745, 753 (5th Cir. 2005). (emphasis added) To allow the Defendants in the case *sub judice* to escape responsibility on summary judgment, serves as a "green light" to continue in their wanton ways against older women

and the helpless.

### (2) Officer Foreman Is *Not* Entitled to Qualified Immunity on the Claims of Excessive Force

The Plaintiff admits to the legal authorities cited by the Defendants in support of their contention that Foreman was entitled to conduct a "seizure" of the Plaintiff since parking in a fire lane is technically a crime. However, the manner in which the "seizure" was conducted was objectively unreasonable, and therefore, clearly excessive.

> The qualified immunity analysis involves a two step inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right: and (2) whether that right was clearly established at the time of the alleged misconduct. * * * A defendant will not be immune if, on an objective basis, it is obvious that no reasonable competent officer would have concluded that the defendant's actions were lawful; . . . .
>
> *    *    *    *
>
> "[A] Fourth Amendment seizure [occurs] . . . When there is a governmental termination of freedom of movement through means intentionally applied" [C]laims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonable' standard. . . . * * * Thus, at the time of this incident, there existed a clearly established constitutional right to be free
> from the use of excessive force. (citations omitted)

*Green v. City of Moss Point, Civil Action 1:09cv638-HSO-JMR, slip op. p.4* (9/13/2011

S.D. Miss.). (See Plaintiff's Ex. "F")

Therefore, the fact that Foreman may have had the legal authority to make a "seizure" of the Plaintiff's person, does not automatically entitle him to qualified immunity. Rather, if there exists a genuine issue as to a material fact (which the Defendants cannot overcome beyond a reasonable doubt), as to whether Foreman's use of force against the Plaintiff was excessive, then there is no qualified immunity. The Plaintiff has clearly demonstrated a "seizure" involving excessive force,

in violation of the Fourth Amendment.  The Plaintiff's sworn Answer to Interrogatory 3, her medical records/bills,  the photographs of her body bruises and abrasions, along with a quick perusal of her August 26, 2011 deposition, (See Plaintiff's Exs. "A, C,  D, & G") clearly show: (1) "injur[ies] [which are more than *de minimis*] that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008).  "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Scott v. Harris,* 550 U. S. 372, 383 (2007).  Further, **"this decision should not be made at the summary judgment stage**.  **Any credibility determination made between the officers' and [plaintiff's] version of events is inappropriate for summary judgment**." *Tarver v. City of Edna,* 410 F.3d 745, 753 (5th Cir. 2005).  (emphasis added)  To allow the Defendants in the case *sub judice* to escape responsibility on summary judgment, serves as a "green light" to continue in their wanton ways against older women and the helpless.

### C. Fifth and Fourteenth Amendments: Equal Protection

The Plaintiff contends that Foreman has demonstrated a propensity to harass, threaten and injure older-aged women in other instances.  (See Plaintiff's Ex. "E") In the case of *Miller v. City of Waveland,* Civil Action No. 1:09cv211-RHW, the plaintiff, another woman over sixty-five years of age, testified to similar mistreatment at the hands of Foreman following an alleged  minor traffic violation.  Thus, the intent to discriminate against, and injure older women who are allegedly not as compliant/humble, or quick to respond as Foreman would desire, is a question of fact for the trier of fact.  To arrest at least two older women within a seven month span on minor/petty violations, and

to "man-handle/seize" them to the extent that they required emergency medical attention and subsequent medical treatment, certainly demonstrates a genuine issue as to a material fact on excessive force, and therefore, whether there was a violation of the Plaintiff's rights under the Equal Protection Clause of the Fifth and Fourteenth Amendments. There is nothing in the facts to suggest that the Plaintiff was a threat to others (*See Scott, supra*) or that she was disobeying a lawful command**.** Rather, her crimes were parking in a fire lane, being an older woman yelling back at a thug wearing a badge, and for not moving quickly enough to satisfy him. Why else would he arrest and "man-handle/seize" these women unless it was his intent to discriminate against them/treat them differently due to their gender and age?

### D. Fifth and Fourteenth Amendments: Due Process

The Plaintiff agrees with the Defendants' arguments as they apply to a *procedural* due process claim. To be sure, pursuant to *Graham,* excessive use of force claims in the course of an arrest may be prosecuted under the Fourth Amendment seizure protections. *See United States, supra.* However, "[t]he Court has held that the Due Process Clause also protects certain fundamental liberty interest[s]" from deprivation by the government, regardless of the procedures provided . . . ." *Chavez v. Martinez,* 538 U. S. 760, 775 (2002). As a pre-trial detainee, the Plaintiff is entitled to Fourteenth Amendment substantive due process protection from cruel and unusual treatment by the Defendants. Therefore, for all of the reasons set forth hereinabove, the Plaintiff contends that she has a viable claim for violation of her substantive due process rights under the Fifth and Fourteenth Amendments.

### E. Eighth Amendment: Cruel and Unusual Punishment

The Plaintiff agrees with the arguments of the Defendants as they apply to the Eighth

Amendment since it is restricted to protecting convicted inmates only.  However, as a pre-trial detainee, the Plaintiff is entitled to Fourteenth Amendment substantive due process protection from cruel and unusual treatment by the Defendants.  *See Chavez, supra.*  Therefore, for all of the reasons set forth hereinabove, the Plaintiff contends that she has a viable claim for violation of her substantive due process rights under the Fourteenth Amendment for cruel and unusual punishment.

### F. Municipal Liability for Actions of Officer Foreman

### (1) Policies, Practices, or Customs (2) Failure to Train

The Plaintiff agrees with the legal authorities and analysis cited by the Defendants in general.  However, with respect to the facts in the case *sub judice*, the Plaintiff contends that Foreman has demonstrated a propensity to harass, threaten and injure older-aged women in other instances. (See Plaintiff's Ex. "E")  In the case of *Miller v. City of Waveland,* Civil Action No. 1:09cv211-RHW, the plaintiff, another woman over sixty-five years of age, testified to similar mistreatment at the hands of Foreman following an alleged  minor traffic violation.  Thus, the intent to discriminate against, and injure older women who are allegedly not as compliant/humble, or quick to respond as Foreman would desire, is a question of fact for the trier of fact.  To arrest at least two older women within a seven month span on minor/petty violations, and to "man-handle/seize" them to the extent that they required emergency medical attention and subsequent medical treatment, certainly demonstrates a genuine issue as to a material fact on excessive force, and, whether there was a violation of the Plaintiff's rights under the Equal Protection and (Substantive) Due Process Clauses of the Fifth and Fourteenth Amendments.  There is nothing in the facts to suggest that the Plaintiff was a threat to others (*See Scott, supra*), or that she was disobeying a lawful command**.**  Rather, her crimes were parking in a fire lane, being an older woman yelling back at a thug wearing a badge, and

for not moving quickly enough to satisfy him.

The Defendants are quite correct on page 17 of their memorandum brief when they acknowledge that a policy, practice, or custom can exist when:  "A persistent, widespread practice of city officials or employees, which, . . . is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to . . . an official to whom that body had delegated policy-making authority."  *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004). *See also Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001), *citing, Webster v. City Houston,* 735 F.2d 838, 841-42 (5th Cir. 1984).   In this respect, the Plaintiff would affirmatively state: (1) that at all times material herein, James Varnell, served in the role as Chief of Police for the Defendant, City of Waveland; (2) that as police chief, Varnell was the policymaker for the Waveland police department; and (3) that on or about September 1, 2011 counsel for the Plaintiff received a facsimile of an August 16, 2011 letter of termination on Police Chief, James Varnell, from defense counsel in another case, *Jez v. City of Waveland, et al.*, Civil Action No. 1:10cv00570 LG-RHW, wherein it is stated in effect, that Varnell was being terminated from his position as Chief of Police for the Defendant, City of Waveland, for a number of reasons/failures, amounting to a policy, practice and custom as a moving force for constitutional violations in his role as a policy-maker for the Waveland, Mississippi police department.  (See Plaintiff's Ex. "B")  As Chief of Police, Varnell was a "municipal policymaker" since at all times he had the "responsibility for . . . setting policy" within the City of Waveland's Police Department.  *See Valle v. City of Houston*, 613 F.3d 526, 542 (5th Cir. 2010).  Whether Varnell's acts and omissions were a result of a policy, practice, or custom to properly train, supervise, and/or retain Foreman and other troubled officers is a question which

should be left to the trier of fact for determination.

## <u>Conclusion</u>

In light of the foregoing facts and analysis, the Plaintiff contends that the Defendants' Motion for Summary Judgment should be denied, with the Plaintiff being awarded costs and reasonable attorney's fees incurred herein.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that the Court deny the Defendants' Motion for Summary Judgment for the reasons set forth hereinabove, as well as for the reasons set forth in the Plaintiff's  Response in Opposition to the Defendants' Motion for Summary Judgment, and in so doing, award to the Plaintiff all costs and attorney's fees incurred herein.

Respectfully submitted, this the17th day of October, 2011.


By: s/*David C. Frazier*

**DAVID C. FRAZIER ,(MSB#5520)**



David C. Frazier
**Frazier Law Firm , PLLC**
706 Watts Avenue
Post Office Drawer 1170
Pascagoula, MS 39568-1170
Telephone: (228) 769-7754
Facsimile: (228) 769-7967
MS Bar No. 5520

**C E R T I F I C A T E**

I., DAVID C. FRAZIER, of the law firm of **Frazier Law Firm, P.L.L.C.,** do hereby certify

that I have this day on this date mailed, US. First Class and electronically filed the foregoing
**Plaintiff's Memorandum in Support of Her Response to the Defendants' Motion for Summary**

**Judgment** with the Clerk of Court using the United States District Court-Southern District of

Mississippi ECF's filing system which sent notification of such filing to:


Joshua W. Danos, Esquire
**DOGAN, WILKINSON, KINARD, SMITH & EDWARDS**
P. O. Box 1618
Pascagoula, MS 39568-1618

SO CERTIFIED, this the 17th day of October, 2011.


s/*David C. Frazier*
**DAVID C. FRAZIER, MSB#5520**


DAVID C. FRAZIER
**Frazier Law Firm, PLLC**
706 Watts Avenue
P.O. Drawer 1170
Pascagoula, MS 39568-1170
Telephone: (228) 769-7754
Fax:       (228) 769-7967
MS Bar No. 5520