**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

MARGARET A. PETERS                                                         PLAINTIFF

v.                                                        CAUSE NO. 1:10CV569-LG-RHW

CITY OF WAVELAND, MISSISSIPPI,
a Municipal Corporation; and
TRAVIS FOREMAN, Officer                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [34] filed by

the City of Waveland, Mississippi, and Travis Foreman.  Margaret A. Peters has

filed a response in opposition to the Motion, but the defendants did not file a reply.

Upon reviewing the submissions of the parties and the applicable law, the Court

finds that the Motion should be granted in part and denied in part.

FACTS

On March 17, 2008, Peters parked in the fire lane at the Wal-Mart

Supercenter in Waveland, Mississippi.  (Am. Compl. 2, ECF No. 5; Defs.' Mot., Ex. F

at 22, ECF No. 34-6).  Travis Foreman, who was an officer in the Waveland Police

Department at the time, saw Peters while he was responding to a complaint of

shoplifting at the store, and he threatened her with a ticket if she failed to move her

vehicle.  (*Id.* at 29).  He then said that she was not moving her vehicle fast enough.

(*Id.*)  Peters claims that she shouted back that she heard him and it was not

necessary to yell.  (*Id.* at 29). She also told him he had an attitude.  (*Id.* at 23).

Foreman then approached Peters and twisted her arm as he attempted to remove

her from her vehicle. (*Id.* at 30, 33). The skin on her arm tore, and began to bleed profusely. (*Id.* at 34). Peters claims that Foreman also slammed her against her vehicle and handcuffed her before roughly pulling her to his patrol car, which was also parked in the fire lane on the opposite side of the store entrance. (*Id.* at 36-37, 40-41). She asserts that she was yelling and crying in pain, but he told her to shut up. (*Id.* at 41-42). She saw her neighbor, dropped her keys on the ground, and asked the neighbor to take her grandchildren home. (*Id.* at 43). However, Foreman told her that her car was going to be impounded and that her grandchildren, who were sitting in her vehicle, were going to be taken to social services. (*Id.* at 44). Foreman allegedly pulled her toward the ground as he picked up her keys, but she did not fall down. (*Id.* at 44-45).

When they reached his patrol car, he told her to get inside. (*Id.* at 46). She thought he wanted her to get in on the opposite side of the vehicle, so she began walking behind the patrol car. (*Id.* at 47). Foreman then grabbed her by the back of her shirt and "yanked it," causing her to fall down. (*Id.* at 50). She claims that he used profanity and told her to get up. (*Id.* at 51). She told him she had undergone back surgery and could not get up. (*Id.* at 51). He allegedly made a kicking motion toward her back but did not kick her. (*Id.*) He refused to help her up, because he did not want to get her blood on his shirt. (*Id.* at 53). He uncuffed one of her hands and allowed her to get up, and then he cuffed her hands in front of her. (*Id.* at 54). Foreman then took her to the police station. (*Id.* at 65). Her arm

injuries were treated by emergency medical technicians who arrived at the station in an ambulance.  (*Id.* at 67-68).  While at the police station, Foreman allegedly threatened to "zap" her, pulled a chair out from under her several times, and repeatedly "rammed" a chair into the back of her legs.  (*Id.* at 66, 72-73).

Peters claims that she suffered torn skin on her arm, aggravation of prior low back injuries, bruises on both arms, a neck injury, chest injuries, and stomach injuries during the events that occurred at Wal-Mart, but she admits that she was not injured at the police station.  (*Id.* at 66, 72-73, 83, 87, 89, 96-97, 102-106).  She has also undergone counseling for mental anguish that she suffered as a result of the incident.  (*Id.* at 107; Pl.'s Resp., Ex. C, ECF No. 37-3).  At the time of the incident, she was almost seventy years old.  (Defs.' Mot., Ex. F at 7, ECF No. 34-6; Am. Compl. 2, ECF No. 5).  She denies that her skin bruises easily or is sensitive, aside from an allergy to latex, and she denies taking blood thinners at the time of the incident.  (Defs.' Mot., Ex. F at 99-101, ECF No. 34-6).

Peters filed this lawsuit against Foreman and the City of Waveland, alleging deprivation of her civil rights, excessive force, failure to adequately train and supervise officers, violation of her rights to substantive and procedural due process, negligent hiring and retention, failure to discipline, and violation of her right to equal protection.  (Am. Compl. 4-8, ECF No. 5).  She is not pursuing any state law claims and is only pursuing her claims pursuant to 42 U.S.C. § 1983.  (Defs.' Mot., Ex. B, ECF No. 35-2).  The defendants have filed the present Motion for Summary Judgment.  They argue that surveillance video of the incident that they obtained

from Wal-Mart demonstrates that Foreman did not act with excessive force.  (*See* Def.'s Mot., Ex. C).  Furthermore, they argue that the video contradicts Peters' account of the events.

The Court has viewed the surveillance video, which consists of two segments. The first segment shows Foreman approaching Peters' vehicle and beginning to escort her to his patrol car.  However, the amount of force that Foreman used on Peters while removing her from the vehicle and handcuffing her cannot be determined from the video, since Peters' vehicle blocks much of the events and the video is not very clear.  The second segment depicts Foreman continuing to escort Peters to the patrol car.  Due to a gap between segments, it cannot be determined whether Peters actually dropped her keys or communicated with a neighbor.  The video does show that Peters began walking behind the patrol car, and Foreman grabbed the back of her shirt, which caused her to fall to the ground.  He appeared to hold on to her shirt until she struck the ground.  It cannot be determined whether he actually pulled her to the ground or she lost her balance.  Peters laid on the ground for some time before Foreman removed one of the cuffs so that she could stand up.  The video reveals that Foreman never attempted or pretended to kick her.  There is no video that shows what happened at the police station.

## DISCUSSION

## I.  Qualified Immunity - Excessive Force

Qualified Immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When determining whether qualified immunity applies, the court decides "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).  If the answer to either of these two inquiries is no, then the government official is entitled to qualified immunity.  *See Pasco*, 566 F.3d at 579.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexas Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).  When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate that the defense does not apply. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The Fifth Circuit has held that "*[a]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 487 (5th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

> It is clearly established law in this circuit that in order to state a claim
> for excessive force in violation of the Constitution, a plaintiff must

> allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.

*Bazan*, 246 F.3d at 487. The determination of whether the use of force was objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Courts must evaluate the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396-97.

The Court must rely on Peters' account of the incident to the extent that it does not contradict the video surveillance. The defendants have not provided Foreman's account of the events. Peters has established that she was injured and the crime that she committed– parking in a fire lane – was minor. Furthermore, the video surveillance reveals that Peters did not pose an immediate threat to the safety of Foreman or others. She was almost seventy years old and was much smaller than Foreman. In addition, the only potential evidence currently before the Court that she was evading arrest or attempting to escape is her attempt to walk behind the police car. The reason why she walked behind the car is disputed by the parties. Nevertheless, there is no indication that there was any real danger of escape. It is undisputed that she was handcuffed, and her age would have impeded any escape attempt. Furthermore, the video reveals that she was not running or

-6-

fighting Foreman.  As a result, there is no evidence of any need on the part of Foreman to twist Peters' arm to the point where it bled, or to pull on the back of her shirt with sufficient force to cause her to fall to the ground.  Therefore, Peters has alleged facts that, if proven, constitute a violation of her clearly established Fourth Amendment right against excessive force.  In view of the summary judgment evidence, the Court cannot conclude that the use of force on Peters was objectively reasonable.  There is no indication that she resisted arrest, aside from making a few statements, walking behind the patrol car, and perhaps not moving as quickly as Foreman wanted.  These circumstances would not have caused a reasonable officer to twist the arm of a sixty-nine-year-old woman or to take her to the ground by force.  Therefore, Foreman is not entitled to summary judgment as to Peters' Fourth Amendment claim of excessive force.

## II.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, §1.  This is essentially a requirement that all persons similarly situated should be treated alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  If a claim does not involve a suspect class or a fundamental right, courts review state action using a rational basis test.  *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 149 (5th Cir. 1991).  Persons over age fifty do not constitute a suspect class; thus, the rational basis test is applied.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976).

The defendants argue that they are entitled to summary judgment, because Peters is asserting a "class of one claim." *See Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006). However, Peters argues that Foreman treated her differently because she was an elderly woman, and that there is no rational basis for such treatment. In support of her assertion, she has presented similar allegations made by an elderly woman against Foreman in another lawsuit filed before this Court. *See Miller v. City of Waveland, Miss.*, No. 1:09CV211, 2010 WL 3614149 (S. D. Miss. Sept. 8, 2010). The defendants have not responded to this argument and have only alleged that they are entitled to summary judgment because Peters has asserted a class of one claim and has failed to allege a lack of rational basis. Therefore, they have not demonstrated that they are entitled to summary judgment regarding this claim.

## III. Substantive Due Process

In *Lindquist v. City of Pasadena*, 525 F.3d 383 (5th Cir. 2008), the Fifth Circuit held that where a plaintiff's equal protection claim and due process claim completely overlap, the substantive due process claim cannot proceed. *Lindquist*, 525 F.3d at 387-88. The plaintiffs argued that the city council's refusal to grant them a used car dealer license denied them equal protection and violated their substantive due process rights. *Id.* at 386-88. The Court noted that the plaintiffs' due process claim could not proceed because it was essentially their equal protection claim "recast in substantive due process terms." *Id.* at 388. The Court relied on a

-8-

Supreme Court decision that held, "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 387 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)).  Therefore, since Peters has alleged an equal protection claim and a substantive due process claim that are based on the same facts, her substantive due process claim must be dismissed.

## IV.  Procedural Due Process

An allegation of denial of Peters' right to procedural due process is included in her Amended Complaint, but the defendants did not attempt to demonstrate that they are entitled to summary judgment with regard to this claim.  Therefore, this claim remains pending.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding that a party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact).

## V. Eighth Amendment

Peters concedes that her allegations of cruel and unusual punishment do not arise under the Eighth Amendment, since she was not a convicted inmate. However, she argues that her claim arises under the Fourteenth Amendment's substantive due process protection.   As explained previously, Peters does not have

a substantive due process claim.  Therefore, the defendants are entitled to summary judgment regarding Peters' purported Eighth Amendment claim of cruel and unusual punishment.

## VI.  Municipal Liability

Section 1983 prohibits "persons" acting under color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  The United States Supreme Court has held that municipalities qualify as "persons" under Section 1983.  *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  As explained previously, official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell*, 436 U.S. at 690 n.55.  A municipality, or county, cannot be held liable solely because it employs a tortfeasor.  *Id.* at 691.  Thus, a plaintiff is required to demonstrate the following three elements: (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

> Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy.  Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations.  But a policy may also be evidenced by custom that is: " . . . a persistent, widespread practice of City officials or employees, which, although not officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . . ."  Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined.

*Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).  A plaintiff must also demonstrate that the municipality was "deliberately indifferent" to the known consequences of the policy.  *Id.* at 580. Deliberate indifference is an objective standard that encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."  *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002).

Peters argues that James Varnell was the Chief of Police and policymaker for the City of Waveland at the time of the incident at issue.  She argues that Varnell's letter of termination is evidence of a policy, practice and custom that served as a moving force for constitutional violations.  The letter, which was sent to Varnell by Waveland's Mayor, David A. Garcia, on August 16, 2011, states:

> This termination is with cause for: incompetency in your position as police chief (including failure to run an efficient, effective and trustworthy department and failure to properly manage the department's expenditures and budget); inefficiency or inattention of duty (including failure to operate an effective department that effectively and efficiently performs its duties, patrols the City and maintains public trust, while also creating a risk to the liability and therefore, treasury of the City; the department also has not written tickets at an effective or realistic level, causing a loss in collections or the ability to seek to recover any such collections); conduct that would reduce public confidence in the city's work force (including inability and failure to properly hire and supervise personnel such as to keep and maintain public confidence); and for creating a departmental situation that poses an unusually high liability to the city (as indicated by prior case resolutions, risk to premium prices and risk of liability).

(Pl.'s Resp., Ex. B, ECF No. 37-2).

In addition, Peters relies on the prior incident in which Foreman allegedly

arrested and injured an elderly woman following a minor traffic violation.  She argues that the issue of whether Varnell's negligent retention of Foreman after that incident, as well as his failure to properly train and supervise Foreman and other officers, constituted a policy, practice, or custom should be presented to a jury.  The defendants have not responded to these arguments.  Moreover, they have not objected to the admissibility of the termination letter or rejected the contention that Varnell was a policymaker.  In addition, they do not allege that Varnell was unaware of the prior incident in which Foreman allegedly used excessive force on an elderly woman.

The fact that the Mayor of Waveland recognized that Varnell had implemented problematic employment practices that subjected the City to lawsuits and civil liability, coupled with the fact that Foreman had previously injured another elderly woman while making a minor arrest, creates a genuine issue of material fact regarding whether the City's employment practices constituted a policy, practice, or custom that was the moving force behind the alleged excessive force that injured Peters.

### Conclusion

The Court finds that the Motion for Summary Judgment should be granted as to Peters' substantive due process and Eighth Amendment claims, and should be denied in all other respects.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [34] filed by the City of Waveland, Mississippi, and Travis

Foreman is **GRANTED** as to Peters' substantive due process claim and Eighth Amendment claim and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 13th day of January, 2012.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE